### WATSON v. BELFIELD and others.[1]

*(Circuit Court, D. New Jersey. February 6, 1886.)*

1. PATENTS FOR INVENTIONS—SUGGESTIONS TO AN INVENTOR.
   The true test to determine whether suggestions made to an inventor should deprive him of the claim to originality in the invention, is to inquire whether enough has been communicated to enable him to apply it without the exercise of more invention.

2. SAME.
   A general knowledge of the substance of the invention covered by letters patent No. 169,871, of November 9, 1875, to John Watson, for improvements in clay-presses, was communicated to the inventor before he attempted to embody it in a practical apparatus, and hence his patent is void for want of novelty in the invention.

In Equity.

*Edw. A. & Wm. T. Day*, for complainant.

*James Buchanan*, for defendants.

NIXON, J. This suit is brought to recover damages for the infringement of letters patent No. 169,871, granted to the complainant, November 9, 1875, for "improvement in clay-presses." Numerous defenses are set up in the answer, and the testimony has been spread out to an extent quite inexcusable, as it seems to me, in view of the shortness of human life, and the pressure for time to consider other matters of at least equal importance.

One of these defenses is that the complainant is not the original and first inventor of the invention patented; and, if this should be found for the defendant, no time need be taken to look into the other defenses. The complainant is a machinist, residing in Trenton, New Jersey. His alleged invention relates to improvements in apparatus for preparing clay for the manufacture of earthenware. He claims that he made the invention in the month of February, 1874, while he was on a visit to East Liverpool, Ohio, taking measurements and making drawings for the machinery to be furnished by him for a new building then in the course of erection for Laughlin Bros. His story, briefly, is that while there, an improvement in clay-presses became the subject of frequent conversation between him and one Pier-

---

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

son, and Homer Laughlin, Shakspear Laughlin, and others; these gentlemen alleging that some new invention of clay-press taps or cocks by one Boulton had lately been introduced into England, the character and nature of which they knew nothing, but which was claimed to be a valuable improvement upon the old method of preparing the clay for the manufacture of pottery ware, and asking him whether he was not able himself to improve upon the tedious and troublesome method then in use in this country, by getting up something new. He said he would try. He thought over the matter, and, taking out his memorandum book in the room at East Liverpool, where he was at work, he made a sketch or drawing of a new tap, which he believed would be an improvement upon the old tap, and showed it to them. They made no suggestion to him about it, and did not appear to understand how it would work, and told him so. He returned to Trenton, and determined to construct a rough model of his drawing, and to make a set of the new taps, and try them on a press that he was then building for West, Hardwick & Co., of East Liverpool. He sent them their press with these new taps about April 7, 1874, and was so well satisfied with their practical working that he placed them also on the new machinery that he was putting into the factory of Laughlin Bros. Their great value was demonstrated by their use, and he applied for and obtained the letters patent, for the infringement of which this bill is filed.

A number of witnesses for the defendants swear to a very different state of facts, and which, if true, negatives the claim of the complainant that he was the original and first inventor of the thing patented.

Edward M. Pierson testifies that he came to this country from England in 1873; that he was a potter by trade, and the son of a potter, residing in Staffordshire, England; that in the month of July of that year he went to East Liverpool, Ohio, for the purpose of going into the pottery business; that arrangements were entered into with Laughlin Bros. for the erection of a new factory there; that he drew the necessary plans, and sent them to his father for examination, and requested him to go to William Boulton, a machinist in Burslem, and get his estimate for the machinery for a four-kiln pottery; that his father sent him an estimate by Boulton, in which general reference was made to his new patent conduit tap; that he wrote again to his father requesting him to send the particulars of the new tap referred to by Boulton; that he received a reply, giving the description, and stating that it was a new tap, patented by Boulton,—very ingenious,—doing away with a number of motions; that it was screwed to the chamber, and socketed in each other; that in the mean time they took other bids for the machinery in their new building, and, after a comparison of the same, gave the contract to the complainant, and invited him to East Liverpool to draw the plans; that he came about February, 1874, and they had several conversations with him about this new Boulton tap, which was then unknown in the

United States; showed him the Boulton estimate, and the letter from the father of the witness explaining it, and asking him whether he would not be able to reproduce it from their descriptions; that, after making a drawing, and examining drawings which the witness produced, he was quite sure that he understood it, and was able to make it; that the result of these conversations and experiments was that they agreed upon the form of the Boulton tap, and complainant was requested to make and put them in the presses, first of West, Hardwick & Co., and afterwards of Laughlin Bros.; and that after a fair trial, regarding them as an improvement upon the old taps, the complainant proposed to the witness that they should apply for a joint patent on the new taps, which proposition he indignantly rejected.

Homer Laughlin confirms the general correctness of this testimony, with more detail as to some particulars. · He recollects the correspondence between Pierson and his father, and between Boulton and his firm, in regard to the new Boulton taps, and also the conference between Watson, Pierson, and himself as to the mode of their construction and application. He states that he told the complainant distinctly, ·when he was preparing his bids for the machinery in the factory building of Laughlin Bros., that they must have the new tap, for the reason that it was supposed to economize so much in labor in operating the clay-presses; that Watson carefully considered the Pierson sketch of the Boulton tap, and the description of it in Boulton's letter, and said that it could be reproduced in this country; that he could make it, and would guaranty it to work; and that it was upon this guaranty that he accepted his bids in the machinery. He further testifies that he heard no suggestion or pretense on the part of the complainant that he was inventing anything, or doing anything more than producing from the descriptions and drawings the English tap of Boulton. There is evidence of the same or of a corroboratory character from other witnesses, such as Edward Gibbs and Perry Johnson, which I will not stop to quote.

All these witnesses seem to be intelligent, disinterested, and unimpeached, except so far as the denial of the truth of their principal statements, made by the complainant, without reserve or qualification, may be regarded as an impeachment. It is impossible to conceive that both parties are speaking the truth, and I am compelled to say that the weight of the evidence is largely against the complainant.

The cardinal features of the patent, on which the said suit is brought, is found in the first claim, to-wit: "The combination, with a clay-press, of a main pipe made in detachable sections." There are some details; but nothing involving invention, and which would not readily suggest themselves to any intelligent mechanic who was trying to attach such a pipe to the leaves of the press. This was also the distinguishing feature of the Boulton tap, a general knowledge of which seems to have been communicated to the complainant before

he attempted to embody it in a practical apparatus for preparing the slip for manufacturing purposes.

It is always a difficult question to determine how far the suggestions made to an inventor deprive him of the claim to originality in the invention thereof. The rule in such cases is concisely stated by Judge STORY in *Alden* v. *Dewey*, 1 Story, 338. One of the defenses in that case was that one Draper had substantially imparted to the patentee the patented improvement. In charging the jury the learned judge asked whether enough had been communicated to enable the inventor to apply it without the exercise of more inventive power. This he regarded as the true test. "It was not enough," he said, "that Draper gave a hint; nor, on the other hand, was it necessary that he should communicate every minute thing about the invention; but he must have communicated the substance."

I regard the new mode of constructing the conduit pipe in detachable sections as the substance of the invention of the complainant, and hence that his patent should be declared void for want of novelty in the invention.